**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

HUGO DE LEON JUAREZ,     )  NO. CV 07-533-GW(E)
                       )
          Petitioner,   )
                       )
   v.                )  REPORT AND RECOMMENDATION OF
                       )
DERRAL G. ADAMS, Warden,   )  UNITED STATES MAGISTRATE JUDGE
                       )
          Respondent.   )
                       )
_____)

    This Report and Recommendation is submitted to the Honorable George H. Wu, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

    Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on January 23, 2007.  The Petition asserted four grounds for relief:

///

(1)   the trial court allegedly violated Due Process by using CALJIC 2.15, assertedly instructing that the jury could infer Petitioner was guilty of carjacking from the fact that Petitioner was in possession of stolen property (Petition, Ground One);

(2)   the trial court allegedly erred in failing to give a voluntary intoxication instruction (Petition, Ground Two);

(3)   the sentencing court allegedly violated the Constitution by: (a) using the same facts to impose an upper term sentence and to impose a consecutive sentence on the gun use enhancement; and (b) imposing an upper term sentence based on facts allegedly not found by the jury, assertedly in violation of Blakely v. Washington, 542 U.S. 296 (2004) ("Blakely") (Petition, Ground Three); and

(4)   the California Court of Appeal erroneously failed to order a correction of the trial court's restitution order on remand (Petition, Ground Four).

Respondent filed an Answer on April 11, 2007, accompanied by a Memorandum of Points and Authorities ("Ans. Mem.") and lodged documents.   Respondent asserted, inter alia, that Grounds Three and Four of the Petition were unexhausted, and that Ground Four of the Petition alleged only a claim of state law error not cognizable on federal habeas corpus.   Petitioner filed a Reply on May 18, 2007.   On June 14, 2007, the Court issued an order: (1) dismissing Ground Four of the Petition with prejudice; (2) requiring further exhaustion of Ground Three of the Petition; and (3) staying the Petition to allow

2

1  Petitioner to exhaust Ground Three of the Petition.

2

3       On March 3, 2008, Petitioner filed a request that the stay be

4  lifted.  On April 1, 2008, Respondent filed a notice of non-opposition

5  to Petitioner's request to lift the stay.  On April 8, 2008, the Court

6  issued a Minute Order lifting the stay and ordering Respondent to file

7  a Supplemental Answer addressing the merits of Grounds One, Two and

8  Three of the Petition.  On July 9, 2008, Respondent filed a

9  Supplemental Answer, accompanied by additional lodged documents.[1]  On

10  August 12, 2008, Petitioner filed a Supplemental Reply.

11

12                              **BACKGROUND**

13

14       A jury convicted Petitioner of carjacking in violation of

15  California Penal Code section 215(a), and found true the allegation

16  that Petitioner personally used a firearm within the meaning of

17  California Penal Code section 12022.53(b) (Reporter's Transcript

18  ["R.T."] 173; Clerk's Transcript ["C.T."] 93-94).  The court sentenced

19  Petitioner to the upper term of nine years (R.T. 190-91; C.T. 104).

20  The court imposed an additional consecutive ten-year sentence on the

21  firearm enhancement pursuant to California Penal Code section

22  12022.53(b) (R.T. 191-92; C.T. 104-05).

23  ///

24       On appeal, Petitioner raised his <u>Blakely</u> claim in a supplemental

25  _____

26       [1]    Respondent did not number the additional documents
    lodged on July 9, 2008 consecutively to the first set of
27  documents lodged on April 11, 2008.  To avoid confusion, the
    Court has designated Respondent's first set of lodged documents
28  as "I Respondent's Lodgment" and the second set of lodged
    documents as "II Respondent's Lodgment."

                                    3

1  brief (see I Respondent's Lodgment 4).  On November 16, 2004, the

2  Court of Appeal ruled that Petitioner's upper term sentence violated

3  Blakely, and that the Blakely error was not harmless (I Respondent's

4  Lodgment 6, pp. 7-28; see also People v. Juarez, 21 Cal. Rptr. 3d 75,

5  80-91 (Cal. Ct. App. 2d Dist. 2004), rev. granted, 23 Cal. Rptr. 3d

6  692, 105 P.3d 113 (Cal. Jan. 19, 2005), transferred with directions to

7  vacate, 34 Cal. Rptr. 3d 195, 119 P.3d 960 (Cal. Sept. 7, 2005), on

8  remand, 2005 WL 3366962 (Cal. Ct. App. 2d Dist. Dec. 12, 2005)).  The

9  Court of Appeal remanded the case for resentencing, but otherwise

10  affirmed the judgment (I Respondent's Lodgment 6; see also People v.

11  Juarez, 21 Cal. Rptr. 3d at 80-91).[2]

12

13      The State filed a petition for review (I Respondent's Lodgment

14  7).  On January 19, 2005, the California Supreme Court granted review,

15  but deferred further action "pending consideration of a related issue

16  in *People v. Black,* S126182, and *People v. Towne*, S125677 . . . or

17  pending further order of the court" (I Respondent's Lodgment 8).

18

19      On June 20, 2005, the California Supreme Court issued its

20  decision in People v. Black, 35 Cal. 4th 1238, 29 Cal. Rptr. 3d 740,

21  113 P.3d 534 (2005), vacated, 127 S. Ct. 1210 (2007) ("Black"),

22  holding that California's statutory scheme providing for the

23  imposition of an upper term sentence did not violate the

24  constitutional principles set forth in Blakely.  On September 7, 2005,

25  the California Supreme Court issued an order transferring Petitioner's

26  _____

27      [2]    The Court of Appeal also concluded that the trial
    court's restitution orders required clarification, and ordered
28  the trial court to "clarify and/or re-evaluate" those orders on
    remand (I Respondent's Lodgment 6, pp. 28-29).

1    case to the Court of Appeal "with directions to vacate and reconsider

2    the cause in light of *People v. Black* . . . ." (I Respondent's

3    Lodgment 9).

4

5        On December 12, 2005, the Court of Appeal issued an opinion

6    affirming Petitioner's sentence (I Respondent's Lodgment 10). The

7    Court of Appeal reasoned that it was bound by the California Supreme

8    Court's decision in <u>Black</u> under principles of <u>stare decisis</u>.

9

10       On January 20, 2006, Petitioner filed a petition for review in

11   the California Supreme Court (I Respondent's Lodgment 13).[3] On

12   February 22, 2006, the California Supreme Court denied the petition

13   for review "without prejudice to any relief to which defendant might

14   be entitled after the United States Supreme Court determines in

15   *Cunningham v. California*, No. 05-6551, the effect of *Blakely v.*

16   *Washington* (2004) 542 U.S. 296 and *United States v. Booker* (2005) 543

17   U.S. 220, on California law" (Respondent's Lodgment 14).

18

19       On January 22, 2007, the United States Supreme Court issued its

20   decision in <u>Cunningham v. California</u>, 549 U.S. 270, 127 S. Ct. 856

21   (2007) ("<u>Cunningham</u>"). <u>Cunningham</u> held that a California judge's

22   imposition of an upper term sentence based on facts found by the judge

23   ─────────────

24       [3]    The copy of this petition for review lodged by
     Respondent does not bear a stamp indicating the filing date. The

25   Court takes judicial notice of the Ninth Circuit's docket in
     <u>People v. Juarez</u>, California Supreme Court case number S140534,

26   available on the California courts' website at
     <u>www.courtinfo.ca.gov.</u> See <u>Mir v. Little Company of Mary Hosp.</u>,

27   844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice
     of court records). The docket shows the petition for review was

28   filed on January 20, 2006.

1  (other than the fact of a prior conviction) violates the

2  constitutional principles set forth in <u>Blakely</u>.  <u>Cunningham</u> expressly

3  disapproved the holding and the reasoning of <u>Black</u>.

4

5      Petitioner filed a habeas petition in the California Supreme

6  Court on July 23, 2007 containing his <u>Blakely/Cunningham</u> claim (II

7  Respondent's Lodgment 3).  On February 13, 2008, the California

8  Supreme Court denied the petition "without prejudice to any relief to

9  which petitioner might be entitled after this court decides *In re*

10 *Gomez*, S155425: whether a habeas corpus petitioner whose conviction

11 became final after Blakely v. Washington (2004) 542 U.S. 296 but

12 before Cunningham v. California (2007) 549 U.S. ___, 127 S. Ct. 856,

13 is entitled to the benefit of the high court's decision in Blakely"

14 (II Respondent's Lodgment 3).

15

16                          **FACTUAL BACKGROUND**

17

18      The following factual summary is taken from the opinion of the

19 California Court of Appeal in <u>People v. Juarez</u>, 2005 WL 3366962, at

20 *1-2 (Cal. Ct. App. 2d Dist. Dec. 12, 2005).  <u>See</u> <u>Galvan v. Alaska</u>

21 <u>Dep't of Corrections</u>, 397 F.3d 1198, 1199 & n.1 (9th Cir. 2005)

22 (taking factual summary from state appellate decision).

23

24         At the time of the incident at issue, the victim, Ryan

25    Comstock, worked for Pizza Hut.  Just before 8:00 p.m. one

26    evening his employer sent him to deliver a pizza in Azusa.

27    He parked his car in front of the customer's house.  As he

28    exited his car, Comstock saw a man standing across the

1  street near a "light-colored pickup truck." The truck was

2  not parked there when Comstock first drove down the street.

3  Comstock would later identify this man as defendant Hugo

4  Juarez.

5

6      As Comstock was standing next to the driver's side door

7  of his car, Juarez approached. Juarez was holding a silver

8  automatic handgun which was level with his waist and was

9  pointed at Comstock. Juarez ordered Comstock to get down on

10 the ground. Comstock got on his hands and knees in the

11 street after Juarez pushed him down. Comstock felt afraid.

12

13      Juarez asked Comstock for the keys to the car.

14 Comstock said the keys were in the ignition. Comstock saw

15 Juarez get in the car, start the ignition and drive away.

16 The light-colored pickup truck took off in the opposite

17 direction. Comstock got up and went to the door of the

18 customer's house. The customer allowed Comstock to enter

19 the house and call the police.

20

21      Three days after the incident, the police located

22 Comstock's car at a mobile home park in Palm Springs.

23 Juarez and another man were sitting in the car at the time.

24 A white pickup truck was parked nearby. A detective who

25 searched Comstock's car found a backpack in the trunk which

26 contained items belonging to Juarez. A couple of days

27 later, another detective searched Juarez's wallet and found

28 a business card from a Pep Boys store in the City of Covina.

1    The police contacted Comstock and told him they had

2    located his car.  Five days after the incident, Comstock

3    went to Palm Springs to pick up his car.  When he got there,

4    he met with a detective, who showed him a six-pack of

5    photographs.  Comstock immediately identified Juarez as the

6    man who took his car.

7

8    . . .

9

10   Juarez testified at trial.  In August 2002, he was

11   living in Cathedral City near Palm Springs.  He was

12   unemployed and had been asked to vacate his apartment

13   because he could not afford to pay the rent.  On August 24,

14   the day of the incident, he planned to drive to his uncle's

15   house in La Puente and see if he could stay there until he

16   found a job.

17

18   On the way to La Puente, Juarez's car (a Cadillac)

19   broke down.  He dropped it off at a Pep Boys store in

20   Covina.  An employee there gave him a Pep Boys business

21   card.  Juarez said he "was desperate" because he had no job,

22   no place to live and no money to send to his family.[4]  So he

23   walked to a store and bought a six-pack of beer.  He started

24

25

26

27    [4]    Juarez testified he moved to the United States from
Mexico to try to help his mother and his son financially.  His
28   mother needed a kidney transplant.

drinking the beer[5] and then he walked "for a long time."  He
did not have a gun on him.

        Juarez came upon a car with its windows down.  He said
the car "caught [his] attention because [he] didn't have a
car to get back home."  There was no one near the car.
Juarez decided to take it.  With a chrome-colored beer can
still in his hand, Juarez got in the car.  He saw the keys
were in the ignition.  He "took off right away."

        Juarez drove the car to Cathedral City because he "did
not want to create problems for [his] uncle" by bringing a
stolen car to the house.  He planned to look for
construction work and to use the car to drive to job sites.

(I Respondent's Lodgment 10, pp. 2-4; <u>People v. Juarez</u>, 2005 WL
3366962, at *1-2 (original footnotes; footnotes renumbered).

### STANDARD OF REVIEW

    A federal court may not grant an application for writ of habeas
corpus on behalf of a person in state custody with respect to any
claim that was adjudicated on the merits in state court proceedings
unless the adjudication of the claim: (1) "resulted in a decision that
was contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of the

---

        [5]    Comstock testified he did not smell alcohol when Juarez
was near him.

9

1  United States"; or (2) "resulted in a decision that was based on an

2  unreasonable determination of the facts in light of the evidence

3  presented in the State court proceeding." 28 U.S.C. § 2254(d) (as

4  amended); see also Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002);

5  Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S.

6  362, 405-09 (2000).

7

8      "Clearly established Federal law" refers to the governing legal

9  principle or principles set forth by the Supreme Court at the time the

10 state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63

11 (2003).  A state court's decision is "contrary to" clearly established

12 Federal law if: (1) it applies a rule that contradicts governing

13 Supreme Court law; or (2) it "confronts a set of facts. . . materially

14 indistinguishable" from a decision of the Supreme Court but reaches a

15 different result.  See Early v. Packer, 537 U.S. at 8 (citation

16 omitted); Williams v. Taylor, 529 U.S. at 405-06.

17

18     Under the "unreasonable application prong" of section 2254(d)(1),

19 a federal court may grant habeas relief "based on the application of a

20 governing legal principle to a set of facts different from those of

21 the case in which the principle was announced."  Lockyer v. Andrade,

22 538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537

23 U.S. at 24-26 (state court decision "involves an unreasonable

24 application" of clearly established federal law if it identifies the

25 correct governing Supreme Court law but unreasonably applies the law

26 to the facts).

27

28     A state court's decision "involves an unreasonable application of

1  [Supreme Court] precedent if the state court either unreasonably

2  extends a legal principle from [Supreme Court] precedent to a new

3  context where it should not apply, or unreasonably refuses to extend

4  that principle to a new context where it should apply." <u>Williams v.</u>

5  <u>Taylor</u>, 529 U.S. at 407 (citation omitted).

6

7       "In order for a federal court to find a state court's application

8  of [Supreme Court] precedent 'unreasonable,' the state court's

9  decision must have been more than incorrect or erroneous." <u>Wiggins v.</u>

10 <u>Smith</u>, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

11 court's application must have been 'objectively unreasonable.'"  <u>Id.</u>

12 at 520-21 (citation omitted); <u>see also</u> <u>Davis v. Woodford</u>, 384 F.3d

13 629, 637-38 (9th Cir. 2004).

14

15      In applying these standards, this Court looks to the last

16 reasoned state court decision.  <u>See</u> <u>Delgadillo v. Woodford</u>, 527 F.3d

17 919, 925 (9th Cir. 2008).  Where no such reasoned opinion exists, as

18 where a state court rejected a claim in an unreasoned order, this

19 Court must conduct an independent review to determine whether the

20 decisions were contrary to, or involved an unreasonable application

21 of, "clearly established" Supreme Court precedent.  <u>See</u> <u>Delgado v.</u>

22 <u>Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).

23 ///

24                              **DISCUSSION**

25

26      For the reasons discussed below, the Court should grant habeas

27 relief on Petitioner's claim that his sentence violated <u>Blakely</u> and

28 <u>Cunningham</u>.  The Court otherwise should deny the Petition on the

1 merits with prejudice.

2

3  I.    **Petitioner's Challenge to the Trial Court's Use of CALJIC 2.15**

4       **Does Not Merit Habeas Relief.**

5

6       In California, carjacking is the "felonious taking of a motor

7  vehicle in the possession of another, or from the person or immediate

8  presence of a passenger of the motor vehicle, against his or her will

9  and with the intent to either permanently or temporarily deprive the

10 person in possession of the motor vehicle of his or her possession,

11 accomplished by means of force or fear."  Cal. Penal Code § 215(a);

12 see also People v. Hill, 23 Cal. 4th 853, 858-59, 98 Cal. Rptr. 2d

13 254, 3 P.3d 898 (2000).

14

15      The trial court instructed the jury using CALJIC 2.15, as

16 follows:

17

18      If you find that a defendant was in conscience [sic]

19      possession of a recently stolen property, the fact of that

20      possession is not by itself sufficient to permit an

21      inference that the defendant is guilty of the crime of

22      carjacking.  Before guilt may be inferred there must be

23      corroborating evidence tending to prove the defendant's

24      guilt.  However, this corroborating evidence need only be

25      slight and need not by itself be sufficient to warrant an

26      inference of guilt.  As corroboration you may consider the

27      attributes of the possession of the time, place and manner

28      [sic] that the defendant had an opportunity to commit the

1    crime charged, the defendant's conduct, or any other

2    evidence which tends to connect the defendant with the crime

3    charged.

4

5    (R.T. 105-06; see C.T. 49).

6

7        Petitioner contends the instruction was an improper permissive

8    inference and burden-shifting instruction which allowed the jury to

9    infer Petitioner's guilt from the mere fact that Petitioner was found

10   in possession of stolen property (i.e., Comstock's car) (Petition,

11   pp. 5, 5a).  The Court of Appeal rejected Petitioner's claim, ruling

12   that the instruction did not allow the jury to convict Petitioner

13   based solely on his possession of stolen property, did not shift the

14   burden of proof, and was not an unconstitutional permissive inference

15   instruction (see I Respondent's Lodgment 10, pp. 4-5; People v.

16   Juarez, 2005 WL 3366962, at *2-3).

17

18       "[I]nstructions that contain errors of state law may not form the

19   basis for federal habeas relief." Gilmore v. Taylor, 508 U.S. 333,

20   342 (1993); see also Estelle v. McGuire, 502 U.S. 62, 71-72 (1991)

21   ("the fact that the instruction was allegedly incorrect under state

22   law is not a basis for habeas relief"); Dunckhurst v. Deeds, 859 F.2d

23   110, 114 (9th Cir. 1988) (instructional error "does not alone raise a

24   ground cognizable in a federal habeas corpus proceeding").  When a

25   federal habeas petitioner challenges the validity of a state jury

26   instruction, the issue is "whether the ailing instruction by itself so

27   infected the entire trial that the resulting conviction violates due

28   process." Estelle v. McGuire, 502 U.S. at 72; Clark v. Brown, 450

13

1  F.3d 898, 904 (9th Cir.), cert. denied, 127 S. Ct. 555 (2006).  The

2  court must evaluate the alleged instructional error in light of the

3  overall charge to the jury.  Middleton v. McNeil, 541 U.S. 433, 437

4  (2004); Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Villafuerte v.

5  Stewart, 111 F.3d 616, 624 (9th Cir. 1997), cert. denied, 522 U.S.

6  1079 (1998).

7

8      The Due Process Clause protects an accused against conviction

9  except upon proof beyond a reasonable doubt of every fact necessary to

10 constitute the charged crime.  In re Winship, 397 U.S. 358, 364

11 (1970).  The State may not use evidentiary presumptions in a jury

12 charge which have the effect of relieving the prosecution of its

13 burden to prove every essential element of the crime beyond a

14 reasonable doubt.  See Francis v. Franklin, 471 U.S. 307, 313 (1985);

15 Sandstrom v. Montana, 442 U.S. 510, 520-24 (1979).

16

17     A permissive inference instruction, such as the instruction

18 challenged here, is constitutional unless the conclusion the

19 instruction suggests cannot be justified by reason and common sense in

20 light of the proven facts before the jury.  Francis v. Franklin, 471

21 U.S. at 314-15; Hanna v. Riveland, 87 F.3d 1034, 1037 (9th Cir. 1996);

22 United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).  A

23 permissive inference instruction does not affect the application of

24 the "beyond a reasonable doubt" proof standard unless there is no

25 rational way the jury could make the connection permitted by the

26 inference.  Ulster County Court v. Allen, 442 U.S. 140, 157 (1979)

27 ("Because [a] permissive inference instruction leaves the trier of

28 fact free to credit or reject the inference and does not shift the

14

burden of proof, it affects the application of the "beyond a
reasonable doubt" standard only if, under the facts of the case, there
is no rational way the trier [of fact] could make the connection
permitted by the inference."); <u>United States v. Warren</u>, 25 F.3d at 897
n.4.

    Petitioner contends that the challenged instruction allowed the
jury to convict Petitioner of carjacking based solely on Petitioner's
possession of stolen property.  According to Petitioner, because
Petitioner admitted he took Comstock's car, but denied he took it from
the victim by force or fear, the instruction "told the jury to infer
guilt of carjacking even if the evidence proved only the simple
possession of a stolen vehicle" (Supplemental Reply, p. 15).  However,
the instruction expressly informed jurors that they could <u>not</u> base a
conviction solely on evidence that Petitioner possessed stolen
property.  Rather, the instruction informed the jury that
corroborating evidence was required before jurors could infer from the
fact of possession that Petitioner was guilty of carjacking.

    The Court of Appeal concluded that the evidence showed a rational
connection between the underlying fact of Petitioner's possession of
the stolen car and the presumed fact that Petitioner committed
carjacking (<u>see</u> I Respondent's Lodgment 10, p. 5).  This determination
was not unreasonable.  Comstock testified that Petitioner approached
Comstock, pointed a gun at Comstock, pushed Comstock to the ground,
asked Comstock for the car keys, and drove off in Comstock's car (R.T.
31-34).  As the Court of Appeal recognized, Comstock's testimony
provided substantial corroborating evidence that Petitioner had

committed carjacking.  Because the evidence permitted a rational juror to "make the connection permitted by the inference," the use of CALJIC 2.15 did not violate due process.  See Ortiz v. Lamarque, 2008 WL 161786, at *14-15 (E.D. Cal. Jan. 15, 2008), adopted, 2008 WL 686885 (E.D. Cal. Mar. 12, 2008); Crawford v. Butler, 2007 WL 214440, at *3-5 (E.D. Cal. Jan. 26, 2007), adopted, 2007 WL 1660673 (E.D. Cal. June 6, 2007), aff'd, 2008 WL 3271143 (9th Cir. Aug. 6, 2008); Ahmed v. Yates, 2006 WL 516661, at *15-17 (N.D. Cal. Feb. 28, 2006); Lyons v. Pliler, 1999 WL 179677, at *6-8 (N.D. Cal. Mar. 29, 1999).

Moreover, permissive inference instructions generally do not effect constitutional error where, as here, other instructions "condition, qualify or explain them." Hanna v. Riveland, 87 F.3d at 1038; see also United States v. Warren, 25 F.3d at 899 (problems can be avoided "if other instructions condition and qualify the permissive inference instruction, so as to make clear that the judge is not implying the jury should return a guilty verdict"). In Petitioner's case, the judge instructed the jury regarding the prosecution's burden of proving Petitioner's guilt beyond a reasonable doubt (R.T. 110-11; C.T. 56).  The judge informed the jury of the elements of carjacking, and instructed the jury that the prosecution had to prove each element (R.T. 111-13; C.T. 58-59).  The judge also instructed the jury that the facts could be proved by circumstantial evidence, defining circumstantial evidence to be evidence that, if found true, proved a fact from which an inference of another fact might be drawn (R.T. 103; C.T. 45).  The judge instructed the jury that an inference was "a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence" (R.T. 103;

1  C.T. 45).  The judge further instructed the jury to consider the

2  instructions as a whole, and "each instruction in light of all the

3  others" (R.T. 101; C.T. 43).  In these circumstances, the challenged

4  instruction did not have the effect of unconstitutionally shifting the

5  burden of proof or otherwise violating due process.  See Crawford v.

6  Butler, 2008 WL 3271143, at *1 (9th Cir. Aug. 7, 2008) (read with

7  other instructions, CALJIC 2.15 did not lessen the burden of proof or

8  render the trial fundamentally unfair);[6] Cortez v. Scribner, 2008 WL

9  628680, at *13-14 (C.D. Cal. Feb. 29, 2008) (use of CALJIC 2.15 in

10 burglary and vehicle theft case not unconstitutional; instruction did

11 not shift burden of proof; jury was instructed regarding burden of

12 proof and elements of burglary and vehicle theft; and inference

13 suggested by instruction was supported by corroborating evidence);

14 Brown v. Yates, 2007 WL 781595, at *18 (E.D. Cal. Mar. 13, 2007),

15 adopted, 2007 WL 1391388 (E.D. Cal. May 10, 2007) (read with other

16 instructions, including reasonable doubt and burden of proof

17 instructions, CALJIC 2.15 did not shift burden of proof); Ahmed v.

18 Yates, 2006 WL 516661, at *18 (same).

19 ///

20 ///

21      Finally, any instructional error was harmless.  In a federal

22 habeas action, the applicable harmless error standard is the standard

23 set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993) ("Brecht").

24 Brecht forbids a grant of habeas relief for a trial-type error unless

25 the error had a "substantial and injurious effect or influence in

26

27      [6]   The Court may cite unpublished Ninth Circuit opinions
   issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir.
28 Rule 36-3(b); Fed. R. App. P. 32.1(a).

17

1  determining the jury's verdict."  <u>Brecht</u>, 507 U.S. at 637-38.

2

3      The jury found true the allegation that Petitioner had personally

4  used a firearm in the commission of the offense.  This finding

5  demonstrates that the jury credited Comstock's version of events,

6  <u>i.e.</u>, that Petitioner used the gun to take Comstock's car, and did not

7  find Petitioner guilty of carjacking based solely on any inference

8  arising from Petitioner's possession of Comstock's car.  Furthermore,

9  the record supports the conclusion that Petitioner's jury

10 conscientiously followed its instructions and did not convict

11 Petitioner simply because Petitioner concededly possessed stolen

12 property.  Deliberations began at approximately 3:50 p.m. on

13 January 17, 2003 (R.T. 154; C.T. 36-38).  On the morning of the next

14 court day, January 21, 2003, the jury sent the judge a request for a

15 readback of "Comstock's testimony - transcripts when first saw Juarez"

16 (R.T. 157-58; C.T. 39, 91).  Following the readback, the jury resumed

17 deliberations, and reached its verdict that afternoon (R.T. 158-774;

18 C.T. 91-94).  These events reinforce the conclusion that the jury did

19 not simply base its verdict on the undisputed evidence that Petitioner

20 was found in possession of Comstock's stolen car.  Had the jury done

21 so, deliberations likely would have been perfunctory.  They were not.

22 Any error in giving CALJIC 2.15 was harmless.

23 ///

24     For the foregoing reasons, the Court of Appeal's rejection of

25 Petitioner's challenge to the use of CALJIC 2.15 was not contrary to,

26 or an objectively unreasonable application of, any clearly established

27 Federal law as determined by the United States Supreme Court.  <u>See</u> 28

28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on

1  Ground One of the Petition.

2

3  **II.   The Trial Court's Failure to Give a Voluntary Intoxication**

4      **Instruction Does Not Merit Habeas Relief.**

5

6      At trial, Petitioner's counsel requested an instruction on

7  voluntary intoxication (Reporter's Transcript of Proceedings on

8  October 7, 2003 ["R.T. Oct. 7, 2003"] at 2).[7]  The court denied the

9  request (R.T. Oct. 7, 2003 at 2-3).  The Court of Appeal upheld this

10 ruling, reasoning that "there was no evidence whatsoever indicating

11 [Petitioner] was intoxicated," and that Petitioner had admitted at

12 trial he committed "grand theft auto" and had formed the specific

13 intent to do so (I Respondent's Lodgment 10, p. 6; see People v.

14 Juarez, 2005 WL 3366962, at *3).  The Court of Appeal also noted that

15 Petitioner's counsel had conceded in closing argument that Petitioner

16 intended to take and keep the car, and that the evidence supported

17 these statements (I Respondent's Lodgment 10, p. 6; see People v.

18 Juarez, 2005 WL 3366962, at *3).

19 ///

20     "As a general proposition a defendant is entitled to an

21 instruction as to any recognized defense for which there exists

22 evidence sufficient for a reasonable jury to find in his favor."

23 Mathews v. United States, 485 U.S. 58, 63 (1988) (citations omitted).

24 "[F]ailure to instruct on the defense theory of the case is reversible

25 error if the theory is legally sound and the evidence in the case

26 ⎯⎯⎯⎯⎯⎯⎯⎯⎯

27     [7]   Discussion of the defense request for an intoxication
   instruction occurred at an unreported bench conference (Oct. 7,
28 2003 R.T. 1).  After trial, the parties stipulated to the events
   occurring at that conference (Oct. 7, 2003, R.T. 2).

1  makes it applicable." <u>Clark v. Brown</u>, 450 F.3d 898, 904-05 (9th
2  Cir.), <u>cert. denied</u>, 127 S. Ct. 555 (2006) (citations and internal
3  quotations omitted); <u>see also</u> <u>People v. Barajas</u>, 120 Cal. App. 4th
4  787, 791, 15 Cal. Rptr. 3d 858 (2004) ("In a criminal trial, the court
5  must give an instruction requested by a party if the instruction
6  correctly states the law and relates to a material question upon which
7  there is evidence substantial enough to merit consideration.")
8  (citations omitted).
9
10     Although California has abolished the diminished capacity
11 defense, evidence of voluntary intoxication is relevant "to the extent
12 it bears upon the question whether the defendant *actually* had the
13 requisite specific mental state required for commission of the crimes
14 at issue." <u>People v. Horton</u>, 11 Cal. 4th 1068, 1119, 47 Cal. Rptr. 2d
15 516, 906 P.2d 478 (1995), <u>cert. denied</u>, 519 U.S. 815 (1996) (citation
16 omitted; original emphasis).  A defendant is entitled to a voluntary
17 intoxication instruction "only when there is substantial evidence of
18 the defendant's voluntary intoxication and the intoxication affected
19 the defendant's 'actual formation of specific intent.'" <u>People v.</u>
20 <u>Williams</u>, 16 Cal. 4th 635, 677, 66 Cal. Rptr. 2d 573, 941 P.2d 752
21 (1997), <u>cert. denied</u>, 523 U.S. 1027 (1998) (citation omitted).  A
22 voluntary intoxication instruction is not required unless there is
23 evidence to show that the defendant "became intoxicated to the point
24 he failed to form the requisite intent." <u>People v. Ivans</u>, 2 Cal. App.
25 4th 1654, 1661, 4 Cal. Rptr. 2d 66 (1992).
26
27     Here, as the Court of Appeal recognized, there was no evidence
28 Petitioner was intoxicated at the time of the offense.  Comstock

testified that he did not smell alcohol when Petitioner came close to

Comstock (R.T. 48-49).  Petitioner testified only that, after his car

allegedly broke down, Petitioner bought a six-pack of beer and began

drinking it (R.T. 71-72).  Petitioner did not indicate he was

intoxicated when he took Comstock's car.  Indeed, Petitioner's

testimony belies any contention that he was profoundly intoxicated at

the time of the offense.  Petitioner testified that, when he saw

Comstock's car, he rapidly went to the car, saw the keys in the

ignition, got in and drove off "right away" (R.T. 72-73).  Petitioner

said he took the car because he needed the car to look for work (R.T.

74, 87-88).  Petitioner testified he chose not to drive to his uncle's

house in La Puente because Petitioner knew he had stolen a car and

"did not want to create problems" for his uncle (R.T. 74).

Petitioner's own testimony was inconsistent with any contention that

Petitioner was so intoxicated that he was unable to form the requisite

intent "to either permanently or temporarily deprive the person in

possession of the motor vehicle of his or her possession" within the

meaning of California Penal Code section 215(a).  The trial court did

not err in failing to give an instruction unsupported by the evidence.

See Williams v. Yarborough, 228 Fed. App'x 705, 707 (9th Cir. 2007),

cert. denied, 128 S. Ct. 2478 (2008) (failure to give voluntary

intoxication instruction not unconstitutional, where California

Supreme Court held evidence was insufficient to support instruction

and Petitioner failed to show this state law ruling was erroneous);

Tayag v. Kane, 2007 WL 963333, at *4 (N.D. Cal. Mar. 30, 2007)

(counsel not ineffective in failing to request a voluntary

intoxication instruction, where there was no evidence "even suggesting

that petitioner was so intoxicated that he could not form the specific

1  intent to burglarize a residence"); <u>Suon v. Carey</u>, 2006 WL 768633, at

2  *5 (E.D. Cal. 2006), <u>adopted</u>, 2006 WL 2065320 (E.D. Cal. July 24,

3  2006) (failure to give voluntary intoxication instruction did not

4  merit habeas relief, where evidence showed only that petitioner was

5  drinking on the day of the incident, but did not show he was

6  intoxicated or that his mental state was affected by his drinking);

7  <u>People v. Horton</u>, 11 Cal. 4th at 1118-19 (voluntary intoxication

8  instruction not warranted, where evidence showed only that defendant

9  had freebased cocaine the day before the crimes, there was no evidence

10  that defendant was intoxicated at time of the crimes, and defendant's

11  statements following the crimes showed defendant was "fully aware of

12  his actions").

13

14      For the foregoing reasons, the Court of Appeal's rejection of

15  Petitioner's challenge to the trial court's refusal to give a

16  voluntary intoxication instruction was not contrary to, or an

17  objectively unreasonable application of, any clearly established

18  Federal law as determined by the United States Supreme Court. <u>See</u> 28

19  U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on

20  Ground Two of the Petition.

21  ///

22  ///

23

24  **III.  <u>Petitioner's Contention That the Sentencing Court Violated Due</u>**

25       **<u>Process Assertedly By Relying on the Same Facts to Impose an</u>**

26       **<u>Upper Term and to Impose a Consecutive Ten-Year Term on the Gun</u>**

27       **<u>Use Enhancement Does Not Merit Habeas Relief.</u>**

28

1    California Penal Code section 1170(b) forbids a court from
2    imposing an upper term sentence "by using the fact of any enhancement
3    upon which sentence is imposed under any provision of law."[8]
4    Petitioner contends the sentencing court relied "on some of the very
5    same facts" to impose an upper term on the carjacking charge and to
6    impose a ten-year consecutive sentence on the gun use allegation
7    (Petition, p. 5a).  Petitioner does not describe the "very same
8    facts," other than to note that, at sentencing, the judge commenced
9    his comments by observing that the case involved a victim who was
10   making a pizza delivery in a "tricked up" car when Petitioner, armed
11   with a gun, approached the victim, forced him to the ground, and took
12   his car (see Supplemental Reply, p. 31, citing R.T. 190).  The last
13   reasoned opinion of the Court of Appeal did not address this claim,
14   and the California Supreme Court rejected the claim summarily (see
15   I Respondent's Lodgments 13, 14).  Therefore, this Court must conduct
16   an independent review to determine whether the decisions were contrary
17   to, or involved an unreasonable application of, "clearly established"
18   Supreme Court precedent.  See Delgado v. Lewis, 223 F.3d at 982.
19   ///

20   Matters relating to sentencing and serving of a sentence
21   generally are governed by state law and do not raise a federal
22   constitutional question.  See Miller v. Vasquez, 868 F.2d 1116, 1118-
23   19 (9th Cir. 1989) (holding that question of whether particular prior
24   conviction qualifies for sentence enhancement under California law is

26   [8]    See also Cal. Ct. R. 4.420(c) ("To comply with section
27   1170(b), a fact charged and found as an enhancement may be used as a reason for imposing the upper term only if the court has discretion to strike the punishment for the enhancement and does
28   so.").

not cognizable on federal habeas corpus); <u>see also</u> <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985), <u>cert. denied</u>, 478 U.S. 1021 (1986) (federal habeas relief "unavailable for alleged error in the interpretation or application of state law"); <u>Sturm v. California Adult Authority</u>, 395 F.2d 446, 448 (9th Cir. 1967), <u>cert. denied</u>, 395 U.S. 947 (1969) ("a state court's interpretation of its [sentencing] statute does not raise a federal question").  Indeed, Petitioner states that this "subclaim" "may or may not" present a federal question (<u>see</u> Supplemental Reply, p. 31).

Under narrow circumstances, however, the misapplication of state sentencing law may violate due process.  See <u>Richmond v. Lewis</u>, 506 U.S. 40, 50 (1992).  "[T]he failure of a state to abide by its own statutory commands [regarding sentencing] may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state." <u>Fetterly v. Pasksett</u>, 997 F.2d 1295, 1300 (9th Cir. 1993), <u>cert. denied</u>, 513 U.S. 914 (1994); <u>see also</u> <u>Walker v. Deeds</u>, 50 F.3d 670, 672-73 (9th Cir. 1995) (state sentencing court violated due process by failing to make habitual offender determination required by state law).  However, "[a]bsent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir. 1994).

The sentencing court imposed the upper term based on findings that: (1) the crime involved planning and sophistication, including more than one participant; and (2) the victim was vulnerable (R.T. 190-91; <u>see also</u> R.T. 178).  The consecutive ten-year term on the gun use enhancement was mandatory under California Penal Code section

12022.53(b), and the court imposed it without additional comment (see R.T. 192).[9]  The court did not indicate it was using the same findings to impose the mandatory ten-year consecutive sentence on the gun use enhancement as the court had used to impose the upper term.

To the extent Petitioner contends the court used the fact that Petitioner employed a gun in the commission of the offense both to impose the upper term and to impose the ten-year consecutive sentence on the gun use enhancement, the record does not support such a contention.  The Court commenced its sentencing discussion with the following:

> As I said before, I read and considered the paperwork supplied by both people, and the defense, and the probation department.

> I recall the testimony on this case that Mr. Comstock was making a pizza delivery with the Pizza Hut sign affixed to the top of his car.  I remember his car being a "tricked out," to use his phrase, automobile.  That he was approached

_____

[9]    Section 12022.53(b) provides:

Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a)[including carjacking], personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this enhancement to apply.

1    by the defendant, who had a gun, and was forced to the

2    ground.  And the car was taken.

4    (R.T. 190).

6         The court then went on to make express factual findings

7    concerning the planning and sophistication of the crime and the

8    vulnerability of the victim, which the court used to impose the upper

9    term (R.T. 190-91).  The court did not indicate it also was imposing

10   the upper term based on use of the gun, and the court's prefatory

11   remarks describing the facts of the crime as the court recalled them

12   cannot be construed reasonably as any sort of finding used to support

13   an upper term sentence.

15        Petitioner has not shown any alleged dual use of facts to impose

16   an upper term sentence and a mandatory ten-year enhancement rendering

17   Petitioner's sentence fundamentally unfair.  Hence, the California

18   Supreme Court's rejection of this claim was not contrary to, or an

19   objectively unreasonable application of, any clearly established

20   Federal law as determined by the United States Supreme Court.  See 28

21   U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on this

22   claim.

23   ///

24   ///

25   **IV.   Petitioner Is Entitled to Habeas Relief on His Blakely/Cunningham**

26        **Claim.**

28        In Apprendi v. New Jersey, 530 U.S. 466 (2000) ("Apprendi"), the

26

United States Supreme Court held that, regardless of its label as a "sentencing factor," any fact other than the fact of a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum among other things must be "proved beyond a reasonable doubt." _Id._ at 490.  In _Blakely_, the Supreme Court held that the "statutory maximum" for _Apprendi_ purposes "is the maximum sentence a judge may impose _solely on the basis of the facts reflected in the jury verdict or admitted by the defendant_ . . . ." _Blakely_, 542 U.S. at 303 (original emphasis).  In _Cunningham_, the Supreme Court held that a California judge's imposition of an upper term sentence based on facts found by the judge rather than the jury violated the Constitution.  _Cunningham_, 127 S. Ct. at 871.

As indicated previously, the Court of Appeal rejected Petitioner's claim on the ground that the Court of Appeal was bound by _Black_.  The California Supreme Court denied Petitioner's January 20, 2006 petition for review containing his _Blakely/Cunningham_ claim without prejudice to any relief to which Petitioner might be entitled after the California Supreme Court decided whether _Cunningham_ was retroactive (_see_ II Respondent's Lodgment 3).  It thus appears that the California Supreme Court did not reach the merits of Petitioner's _Blakely/Cunningham_ claim.  The last reasoned state court opinion is the opinion of the Court of Appeal applying _Black_, a case later abrogated by _Cunningham_.  Because the Court of Appeal applied an incorrect legal standard, this Court's review is _de novo_.  See _Frantz v. Hazey_, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

de novo the constitutional issues raised"); <u>Butler v. Curry</u>, 528 F.3d
624, 641 (9th Cir. 2008) (applying <u>de novo</u> review to <u>Cunningham</u> claim
where Court of Appeal's application of <u>Black</u> was contrary to clearly
established Supreme Court law); <u>see also</u> <u>Panetti v. Quarterman</u>, 127
S. Ct. 2842, 2855, 2858-59 (2007) (where state court's decision
constituted an unreasonable application of Supreme Court law, review
of petitioner's claim is "unencumbered by the deference [section
2254(d)] normally requires").


The Ninth Circuit recently held that <u>Cunningham</u> is retroactive.
<u>Butler v. Curry</u>, 528 U.S. at 634-39.  <u>Butler v. Curry</u> is binding on
this Court.  <u>See</u> <u>Hart v. Massanari</u>, 266 F.3d 1155, 1170 (9th Cir.
2001) (district judge may not "disagree with his learned colleagues on
his own court of appeals who have ruled on a controlling legal
issue"); <u>Zuniga v. United Can Co.</u>, 812 F.2d 443, 450 (9th Cir. 1987)
("[d]istrict courts are, of course, bound by the law of their own
circuit").  Respondent argues that, because a petition for rehearing
is pending in <u>Butler v. Curry</u> and the mandate has not yet issued, the
panel decision is not authoritative.  This argument is meritless.
<u>See, e.g.</u>, <u>Wedbush, Noble, Cooke, Inc. v S.E.C.</u>, 714 F.2d 923, 924
(9th Cir. 1983).[10]


Under California's Determinate Sentencing Law, "three terms of
imprisonment are specified for most offenses."  <u>Black</u>, 35 Cal. 4th at

_____

[10]    The Court takes judicial notice of the Ninth Circuit's
docket in <u>Butler v. Curry</u>, Ninth Circuit case number 07-56204.
<u>See</u> <u>Mir v. Little Company of Mary Hosp.</u>, 844 F.2d 646, 649 (9th
Cir. 1988) (court may take judicial notice of court records).
The docket shows that, on July 28, 2008, the Ninth Circuit
granted the appellant's motion for a 90-day stay of the mandate.

1246-47. The statute defining the offense generally prescribes three

terms of imprisonment, an upper term, a middle term and a lower term.

Cunningham, 127 S. Ct. at 861. At the time Petitioner was sentenced,

California Penal Code section 1170(b) required the sentencing court to

impose the middle term "unless there [were] circumstances in

aggravation or mitigation of the crime."[11] Under California

sentencing rules promulgated pursuant to California Penal Code section

1170.3, selection of the upper term was justified "only if, after a

consideration of all the relevant facts, the circumstances in

aggravation outweigh[ed] the circumstances in mitigation." See former

Cal. Ct. R. 4.420(b).[12] "Circumstances in aggravation" meant "facts

which justify the imposition of the upper term." See former Cal. Ct.

R. 4.420(e). At the time of Petitioner's sentencing, Rule 4.421 of

the California Rules of Court set forth a non-exhaustive list of

circumstances in aggravation which included, among other things, the

factors that the victim was "particularly vulnerable" and that "the

manner in which the crime was carried out indicate[d] planning,

sophistication, or professionalism." See former Cal. Ct. R.

4.421(a)(3), 4.421(a)(8).[13]

---

[11]    California Penal Code section 1170(b) subsequently was
amended to provide, among other things, that where a statute
specifies three possible terms of imprisonment, the choice of the
appropriate term "shall rest within the sound discretion of the
court." See Cal. Penal Code § 1170(b) (as amended by Cal. Stats.
2007 ch. 3, § 2 (eff. March 30, 2007).

[12]    A May 23, 2007 amendment, not pertinent to the issue
presented here, substantially rewrote Rule 4.420. See Historical
Notes, Cal. Ct. R. 4.420.

[13]    Rule 4.421 also was amended in 2007. See Historical
Notes, Cal. Ct. R. 4.421.

1    As indicated above, the sentencing court imposed the upper term

2  based on findings that: (1) the crime involved planning and

3  sophistication, including more than one participant; and (2) the

4  victim was vulnerable (R.T. 190-91; <u>see also</u> R.T. 178).  Neither

5  finding was admitted by Petitioner or found true by the jury.  Neither

6  was essential to the jury's determination that Petitioner was guilty

7  of carjacking and that the gun use enhancement was true.  Therefore,

8  Petitioner's upper term sentence violated <u>Blakely</u> and <u>Cunningham</u>.  <u>See</u>

9  <u>Butler v. Curry</u>, 528 F.3d at 641-48 (imposing upper term sentence

10  based on alleged vulnerability of victim and petitioner's probationary

11  status at time of offense violated Sixth Amendment as construed in

12  <u>Blakely</u> and <u>Cunningham</u>); <u>People v. Sandoval</u>, 41 Cal. 4th 825, 837-38,

13  62 Cal. Rptr. 3d 588, 161 P.3d 1146 (2007) (upper term sentence based

14  on violence and callousness of offense, vulnerability of victims and

15  fact that offense involved planning and premeditation violated

16  <u>Cunningham</u>); <u>People v. Miller</u>, 164 Cal. App. 4th 653, 669, 78 Cal.

17  Rptr. 3d 918 (2008) (upper term sentence based on vulnerability of

18  victim violated <u>Cunningham</u>); <u>People v. Cardenas</u>, 155 Cal. App. 4th

19  1468, 1479, 66 Cal. Rptr. 3d 821 (2007) (upper term sentence based on

20  finding that offense involved planning and sophistication violated

21  <u>Cunningham</u>).

22

23    <u>Blakely/Cunningham</u> error is subject to harmless error analysis.

24  <u>See</u> <u>Washington v. Recuenco</u>, 548 U.S. 212, 222 (2006); <u>Butler v Curry</u>,

25  528 F.3d at 648.  Under the harmless error standard applicable in

26  federal habeas cases, the Court must determine whether the error had a

27  "substantial and injurious effect" on Petitioner's sentence.  <u>See</u>

28  <u>Brecht v. Abrahamson</u>, 507 U.S. at 637-38; <u>Butler v. Curry</u>, 548 F.3d at

1  648.

2

3      Under California law, the existence of one aggravating factor

4  sets the upper term as the maximum term.  See Butler v. Curry, 548

5  F.3d at 642 (citing People v. Black, 41 Cal. 4th 799, 62 Cal. Rptr. 3d

6  569, 161 P.3d 1130 (2007), cert. denied, 128 S. Ct. 1063 (2008)).

7  Therefore, a Blakely/Cunningham error is harmless "if it is not

8  prejudicial as to just one of the aggravating factors at issue."

9  Butler v. Curry, 548 F.3d at 642.

10

11      The error was prejudicial as to all of the aggravating factors at

12  issue in the present case.  As indicated above, the jury could have

13  found the elements of carjacking and gun use without finding "planning

14  and sophistication" or the participation of another person.  Moreover,

15  the evidence supporting "planning and sophistication" and the

16  participation of another person was not overwhelming.  Comstock

17  testified that, when Comstock first noticed Petitioner, Comstock saw a

18  light-colored pickup truck near Petitioner, which had not been there

19  when Comstock first drove down the street (R.T. 30-31).  Comstock

20  testified that, as Petitioner drove off in Comstock's car going

21  eastbound, the pickup truck drove off westbound (R.T. 34).  The

22  parties stipulated that, three days after the incident, a Palms

23  Springs police officer saw a white Honda (later identified as

24  Comstock's car) and a white pickup truck at the mobile home park, and

25  identified Petitioner as the driver of the Honda and Jorge Ramirez as

26  the passenger (R.T. 63).  Petitioner testified that he had left some

27  personal belongings in an apartment in Cathedral City, and that a

28  friend of Petitioner who had a pickup truck was going to move

Petitioner's belongings (R.T. 76-77).  However, Petitioner said his
friend's pickup truck was not white or light-colored, and was not the
truck at the Palm Springs mobile home park (R.T. 77).  Although jurors
could have found "planning," if not "sophistication," and the
participation of another person, from this rather thin evidence, the
evidence certainly did not compel such findings.

Similarly, the finding of vulnerability was neither essential to
the verdict nor supported by overwhelming evidence.  Under California
law, a victim is "particularly vulnerable" "only if he is vulnerable
to a special or unusual degree, to an extent greater than in other
cases."  Butler v. Curry, 548 F.3d at 649 (citation and internal
quotations omitted).  "In the overwhelming majority of cases,
'particularly vulnerable victims' have had inherent personal
characteristics that, sometimes in combination with the manner in
which the crime was committed, render them more vulnerable than other
victims."  Id. (citations omitted).  "The California courts have in a
few cases relied on aspects of the status of a victim that are more
changeable than age or physical frailty, but have done so only when
the victim was seriously, if only temporarily incapacitated."  Id.
(citations omitted).

The sentencing court based its finding of vulnerability on the
observation that Comstock's car bore a Pizza Hut sign indicating that
the driver was making deliveries and could carry money (R.T. 191).
The court acknowledged that Comstock was not "vulnerable" "within the
traditional sense of the vulnerable victim" (R.T. 191).  There was no
evidence that Comstock, who was nineteen years old and six feet one

1  inch tall (see R.T. 43, 51) was physically or mentally infirm, or any
2  less able than other victims to "ward off attack" because of any
3  incapacity or disability.  See Butler v. Curry, 548 F.3d at 649.  This
4  Court cannot confidently conclude that the jury would have found, had
5  it been asked, that the victim was "particularly vulnerable."  See
6  People v. Sandoval, 41 Cal. 4th at 842 (imposition of upper term
7  sentence based on vulnerability of victims due to fact that they were
8  unarmed and taken by surprise not harmless; victims were not elderly,
9  very young or disabled, and court could not "confidently conclude that
10 the jury would have made the same findings").  The Blakely/Cunningham
11 error here was not harmless.

13      In sum, because the sentencing court imposed an upper term
14 sentence based on facts not admitted by Petitioner or found by the
15 jury in violation of Blakely and Cunningham, and because the error was
16 not harmless, Petitioner is entitled to habeas relief on his
17 Blakely/Cunningham claim.
18 ///
19 ///
20                          **RECOMMENDATION**

22      For the reasons discussed above, IT IS RECOMMENDED that the Court
23 issue an order directing that Judgment be entered: (1) granting a
24 conditional writ of habeas corpus ordering that Respondent treat
25 Petitioner's upper term sentence as a middle term sentence, unless
26 within ninety (90) days of the entry of Judgment, Petitioner is
27 resentenced in compliance with Blakely v. Washington, 542 U.S. 296
28 (2004) and Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856

1  (2007); and (2) otherwise denying the Petition with prejudice.

2

3         DATED:  January 8, 2009.

4

5                          _____/S/_____

6                          CHARLES F. EICK
                           UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.